869 F.2d 1493
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert S. SOLOE, Petitioner
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent
 No. 88-3044.
 United States Court of Appeals, Sixth Circuit.
 Feb. 21, 1989.
 
 Before MERRITT and MILBURN, Circuit Judges and LIVELY, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 Claimant in this black lung case appeals the denial of benefits by the Benefits Review Board. Claimant challenges the Board's affirmance of the Administrative Law Judge's finding that claimant's chest x-rays did not entitle him to the interim presumption of disability due to penumoconiosis and that the presumption of disability due to pneumoconiosis was rebutted by evidence that his disability did not arise from coal mine employment. Claimant also challenges the BRB's affirmance of the ALJ's refusal to admit certain medical evidence proffered by claimant less than twenty days before the hearing. Because we believe that the Board's decision is supported by substantial evidence and that the ALJ properly refused to admit evidence submitted by the claimant after the twenty-day bar, we affirm the decision of the Board.
 
 I.
 
 2
 A hearing was held on Soloe's claims before ALJ Hillyard beginning on August 21, 1988. At the hearing, Soloe proffered a 1983 hospitalization record which he had failed to exchange within 20 days before the hearing. The ALJ, finding that claimant's reason for the delay--neglecting to inform his counsel of his hospitalization--was not just cause for the untimely exchange excluded the evidence.
 
 
 3
 By a Decision and Order issued April 15, 1986, the ALJ denied benefits. Claimant timely appealed to the Benefits Review Board. On July 20, the BRB remanded the cause for further consideration of whether Soloe was entitled to benefits under 20 C.F.R. Sec. 410.490 in light of the then recent decision of this Court in Kyle v. Director, OWCP, 319 F.2d 139 (6th Cir.1987). Upon the Director's motion, the Board reconsidered its decision. On November 23, 1987, the BRB, upon reconsideration, held that the ALJ's finding that the interim presumption under 20 C.F.R. Sec. 727.203(b)(4) was rebutted precluded a finding of entitlement under 20 U.S.C. Sec. 410.490 and affirmed the decision of the ALJ. Soloe now appeals.
 
 II.
 A. Claimant's Background
 
 4
 Soloe was born on December 12, 1924 and has a fourth grade education. Soloe worked as a coal miner for a period of at least eleven years ending in 1954. He then worked at various manufacturing facilities until 1974 when he became disabled due to a back injury. For the past 26 years, Soloe has smoked approximately one-half pack of cigarettes per day.
 
 B. Medical Evidence
 1. X-ray Studies
 
 5
 Seventeen readings of ten chest x-rays performed on Soloe were included as medical evidence. (The details of such reading are contained in Claimant's Brief at 8-9 and in Decision and Order, No. 83-BLA-7339 (Ad.Law Judge April 25, 1986), J.A. at 79-80. Four x-rays were read negative for pneumoconiosis by B readers and one was read negative by a Board certified radiologist. One x-ray was read positive by a B reader. This positive x-ray was taken less than three months after an x-ray yielding a negative reading, and over twenty-seven years after the claimant's last coal mine employment.
 
 2. Pulmonary Function Studies
 
 6
 Only one pulmonary function study which complied with the quality standards was introduced. Its results were above the table values and, therefore, could not be used as presumptive evidence of disability.
 
 3. Blood Gas Studies
 
 7
 Two blood gas studies were completed. Neither produced results below the table values and, therefore, could not be used as presumptive evidence of disability.
 
 4. Narrative Medical Evidence
 
 8
 Dr. W.R. Rucker examined Soloe on January 16, 1987. Upon review of Soloe's occupational, smoking and medical history his symptoms and the performance of a medical examination and EKG, Rucker's diagnosis was chronic obstructive pulmonary disease and chronic bronchitis. Rucker indicated that the conditions were not related to dust exposure explaining that claimant had taken no chest x-ray.
 
 
 9
 Soloe was examined at the Louisville Veterans' Administrative Hospital in May of 1977. His attending physician concluded that there was no active cardiac or pulmonary disease and that claimant had certain back problems.
 
 
 10
 Dr. J.D. Foley examined claimant who complained of breathing difficulty on October 29, 1975. Upon review of his symptoms, work, smoking, medical and family history and performance of an examination and x-rays, Foley's diagnosis was pneumoconiosis, disabling.
 
 
 11
 Dr. R. Eubank examined Soloe on October 27, 1975. Upon review of his symptoms, work, smoking, medical and family history, physical exam and ventilatory study, Eubank's diagnosis was chronic obstructive lung disease with moderately restrictive component which is helped with bronchodialators. Eubank further opined that the etiology was uncertain but that the diagnosis was consistent with pneumoconiosis.
 
 
 12
 Dr. W.M. Scott admitted Soloe to the Scott County Memorial Hospital on November 25, 1974 and discharged him two days later. After reviewing claimant's history and chest x-rays, performing a pulmonary function study and physical exam, Scott diagnosed claimant's problem as chronic obstructive lung disease. Scott noted that the chest x-ray did not show pneumoconiosis and further reserved his opinion as to whether Soloe had pneumoconiosis pending the results of other diagnostic tests. Dr. Scott previously treated Soloe for one and one-half years for chronic obstructive lung disease and possible black lung disease. In a note dated January 13, 1976, Scott stated that claimant was, in his opinion, totally disabled.
 
 
 13
 Dr. B.E. Jones examined Soloe on March 15, 1974. Jones read Soloe's chest x-ray as positive for pneumoconiosis and administered a ventilatory study, the results of which were within normal limits. He diagnosed Soloe as having pneumoconiosis and advised him to avoid irritating dust. Jones examined Soloe again on June 22, 1976 and reached a similar conclusion.
 
 
 14
 Dr. M.L. McClain examined claimant on August 14, 1973. His diagnosis was chronic bronchitis with possible emphysema. He opined that claimant could probably not work in a mine.
 
 
 15
 Soloe was hospitalized twice on December 26, 1969 for back problems and for an upper respiratory infection. Soloe was hospitalized in March, 1966 for pneumonia.
 
 III.
 
 16
 Review of decisions of the Benefits Review Board is very narrow. Welch v. Benefits Review Board, 808 F.2d 443, 445 (6th Cir.1986). The Board's decision may be reversed only if its findings of fact and conclusions of law are not supported by substantial evidence or not in accordance with law. Id.
 
 
 17
 Under the Black Lung Benefits Act, a miner may establish a presumption of total disability due to pneumoconiosis if he produces one of the following:
 
 
 18
 1) chest x-ray establishing pneumoconiosis;
 
 
 19
 2) ventilatory function or blood gas studies the results of which fall below prescribed levels; or
 
 
 20
 3) other medical evidence, including the documented opinion of a physician which establishes a totally disabling respiratory or pulmonary impairment.
 
 
 21
 20 C.F.R. Sec. 727.203(a)(1)-(4). Once the presumption is established, the burden shifts to the party opposing benefits to rebut it by showing inter alia, that the disability did not arise in whole or in part from coal mine employment. 20 C.F.R. Sec. 727.203(b)(3).
 
 
 22
 Soloe challenges the following findings of the ALJ:
 
 
 23
 1) that the x-ray evidence was not sufficient to invoke the presumption of total disability due to pneumoconiosis;
 
 
 24
 2) that the evidence established that Soloe's disability does not arise in whole or in part from his coal mine employment and that he does not have pneumoconiosis; and
 
 
 25
 3) that Soloe did not have just cause for his failure to exchange his 1983 hospitalization record no later than 20 days before his hearing.
 
 
 26
 For the reasons that follow, Soloe's challenges are meritless.
 
 
 27
 Soloe contends that the ALJ should have given special weight to the November 21, 1981 x-ray because it was interpreted positively by two B-readers. Moreover, Soloe contends that it should be given special weight because it is the latest chest x-ray of Soloe and since pneumoconiosis is a progressive disease, later x-rays provide a more reliable diagnosis. Soloe omits from his analysis, however, as recognized by the ALJ, that if pneumoconiosis was present it should appear on the x-rays long before the last one taken, especially since Soloe has not worked in the mines for 27 years. The ALJ, on the other hand, offered a well reasoned basis for his decision which is supported by substantial evidence in the form of numerous other x-rays.
 
 
 28
 Soloe next contends that the ALJ erroneously relied on the opinions of Drs. Rucker and Scott in finding that the evidence established that claimant's disability was not the result of his coal mine employment. Specifically, Soloe contends that Dr. Rucker's report is not a reasoned medical report because his conclusion of no pneumoconiosis was based on Soloe's failure to obtain an x-ray. Moreover, Soloe contends that the ALJ misinterpreted Dr. Scott's report. Soloe's arguments are without merit. The ALJ relied not only on the reports of Scott and Rucker but on the findings of Eubanks, McClain, Jones and Foley and the lack of evidence linking Soloe's condition to his coal mine employment. All of this evidence together provides substantial evidence to support the ALJ's decision.
 
 
 29
 Soloe next contends that the ALJ erred in holding that the presumption of disability was rebutted by evidence establishing that he did not have pneumoconiosis. Again Soloe argues that the ALJ misinterpreted Scott's report. His argument is without merit, however, as Scott's report and the other medical evidence are sufficient to support the ALJ's finding that Soloe did not have pneumoconiosis.
 
 
 30
 Soloe argues that the ALJ's refusal to admit into evidence the 1983 hospitalization report was clearly erroneous. Specifically, Soloe challenges the finding that his failure to inform his attorney of the existence of the report was not just cause for his failure to exchange the evidence within the 20 day time limit imposed by 20 C.F.R. Sec. 725.456(b)(2). The ALJ, however, is given broad discretion by Sec. 725.456(b)(2) in deciding whether to exclude untimely submitted evidence. See Byrd v. Director, OWCP, No. 86-3001, slip op. at 3-4 (6th Cir. Dec. 9, 1986). In this case, the ALJ cannot be said to have abused his discretion in excluding evidence not timely exchanged due to nothing more than the neglect of the moving party. There is no assertion that Soloe was not aware of the rules or failed to exchange the evidence because of some extenuating circumstance.
 
 
 31
 Finally, Soloe argues that Sec. 725.456(b)(2), which grants the ALJ the power to make evidentiary determinations is invalid because it violates Sec. 413(b) of the Act, 30 U.S.C. Sec. 923(b). Sec. 923(b) requires the ALJ to consider "all relevant evidence" in making an eligibility determination. Specifically, Soloe argues that since application of Sec. 725.456(b)(2) allows relevant evidence to be excluded, here, the record from Soloe's latest hospital admission, it violates the Sec. 923(b) mandate that all relevant evidence be considered and is not reasonably fashioned to carry out the purposes of the Act. See Appellant's Brief at 26-28.
 
 
 32
 The Director, on the other hand, citing 30 U.S.C. Sec. 936 which grants the Secretary broad authority to "issue such regulations as [he/she] deems appropriate to carry out the provisions of this title," argues that the regulations are, in fact, related to the purposes of the Act. Specifically, the Director argues, the evidentiary rules serve to expedite the claims process, eliminate surprise, and require the parties to undertake the timely development of their positions. Moreover, the Director argues, Soloe is not without a remedy since he can initiate modification procedures under 20 C.F.R. Sec. 725.310 to correct mistakes of fact. See Appellee's Brief at 19, citing n. 5 at 16.
 
 
 33
 The legislative history of Sec. 923(b) reveals it was the product of Congress' dissatisfaction with the Social Security Administration's practice of rejecting claims on the sole basis of a single negative x-ray. See S.Rep. No. 92-743, 92nd Cong., 2d Sess., reprinted in 1972 U.S.Code Cong. & Admin.News, 2305, 2313-14. The language Sec. 923(b) itself supports this conclusion:
 
 
 34
 ... [N]o claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram. In determining the validity of claims under this part, all relevant evidence shall be considered, including, where relevant, medical tests, ... evidence submitted by the claimant's physician, or his wife's affidavits....
 
 
 35
 30 U.S.C. Sec. 923(b). Moreover, as stated in the Senate Report, Congress expected that "evidentiary rules would be adopted consistent with Sec. 923(b)." Sen.Rep. at 2322.
 
 
 36
 The Sec. 725.456(b) evidentiary rules were promulgated to "expedite the claims process, eliminate surprise and require the parties to undertake a timely development of their positions." 43 Fed.Reg. 36,798 (1978). In addressing comments that such rules would result in the unfair limitation of a party's submission of evidence, the Department asserted that the rules were not designed to exclude evidence but were designed to impose "severe consequences" on a dilatory party. Id.
 
 
 37
 No courts have reached the narrow issue of the relationship of Sec. 923(b) to Sec. 727.456(b). It seems clear, however, that the Sec. 727 evidentiary rules are reasonable rules of practice which are necessary to the efficient operation of the claims adjudication process.
 
 
 38
 For the foregoing reasons, the Board's decision is affirmed.